R. A. MICKLE, *et al., v.* BROWN & O'NEAL, EX'RS, etc.

1. EXECUTORS. *When not liable for loss of trust property.* Executors directed by will to sell the property of their testator were notified on the day fixed for the sale of certain slaves that they were claimed adversely by one who had taken steps to test his title thereto,

*Held,* A sufficient justification for postponing the sale until adjudication of the title, and that the fact of the slaves being freed by the intervention of the war before final determination of the cause did not render the executors liable for their loss.

Anthorities cited: Perry on Trusts, ?770; Hill on Trusts, ?474, note 3.

2. SAME. *Degree of diligence. Case in judgment.* The degree of diligence required of executors acting in perfect faith is that which would be deemed sufficient in the judgment of a reasonably prudent and diligent man in the management of his own affairs. Thus, where executors, at the sale of trust property, took notes of a non-resident purchaser of reputed wealth at the time, whose wife and the sureties thereon were legatees, the shares of the sureties, then considered as sufficient security for the amount being under the control of the executors in this State, and within the jurisdiction of its Courts, and one of the sureties residing therein, and where such executors failed to sue the maker after maturity of his notes, and before his utter insolvency, disclosed a month or two thereafter, or after his insolvency, but sued the resident surety and applied the shares of both sureties to *pro tanto* payment of the notes,

Mickle *v.* Brown.

*Held,* Under the circumstances, a sufficient exercise of care and diligence to exonerate the executors from liability for the unsatisfied balance thereon.

Authorities cited: S. C. R., (new series,) 337; 1 Ired. Eq., 108; 5 How., 275.

FROM MONTGOMERY.

Appeal from the Chancery Court.    C. G. SMITH, Chancellor.

HENRY & LURTON for plaintiffs.

BAILEY and E. H. EAST for defendants.

DEADERICK, J., delivered the opinion of the Court.

Complainants, who are the legatees of John C. Mickle, deceased, filed their bill on September 14, 1869, in the Chancery Court at Clarksville, against defendants, who were the executors of the will of said John C. Mickle.

The bill seeks an account and settlement with said executors.

Upon an answer by the executors, an account was ordered, to which exceptions on both sides were taken, and a decree rendered, from which both parties prayed an appeal to this Court.

Testator died in August, 1859, in Montgomery County, having, in the preceding month of April, made and published his will, by which he directed that his executors should sell all his property, real and personal, upon such terms, as to credit, as would be most to

the interest of his estate; the proceeds of sale to be equally divided between his wife and children. Of this will defendants were appointed executors. They qualified at the September Term, 1859, of the County Court, and on October 19, 1859, sold real estate, negroes, and other personalty, amounting to about $15,000, upon a credit of twelve months.

Other slaves, of the value of about $10,000, belonging to said testator, were then in litigation, and it was not deemed proper by the executors to offer them for sale.

At the sale, G. W. Clanton, the husband of one of the daughters of the testator, bought negroes, and executed his note for upwards of $3,500, for the amount of his purchases, with A. B. and R. A. Mickle, two of the legatees, as his sureties.

Said Clanton also gave his note for $98, with said A. B. Mickle surety, for purchases made at said sale.

After the termination of the litigation, involving the right to said slaves, by final decree in the Supreme Court at Nashville, in favor of the executors, they advertised the said slaves for sale at public auction, in April, 1860.

After the slaves had been taken to Clarksville on the day of sale, for the purpose of being sold, the executors were notified by Lackey, who set up claim to said slaves, not to sell them, as he was about to bring suit to test his title to them. The executors, upon inquiry, ascertained that Lackey had already employed lawyers to institute suit to recover said slaves,

and upon consultation with their own counsel were advised, and so determined, that it was inexpedient to offer the slaves for sale at that time, in view of the threatened litigation.

In August, 1860, the suit was instituted, and was determined, upon demurrer to complainants' bill, in favor of the executors. The complainants appealed to the Supreme Court, and at its December Term, 1860, the cause was argued and held under advisement, and no other Term of the Supreme Court having been held until 1865, the cause was again argued at that Term, and decree rendered at the next Term, 1866, in favor of the executors.

In the meantime the war had intervened, the slaves were liberated by the events of the war, and Clanton had become insolvent.

The principal questions involved in the exceptions to the Master's report arise upon the liability of the executors for the value of the slaves not sold by them, and subsequently freed, and their liability for the debts due from Clanton, which have been lost, except so much as has been secured out of legacies to his sureties.

For the complainants it is insisted that the loss of the slaves resulted from the failure of the executors to sell as they were directed to do by the will; and the excuse given by them for not performing this duty enjoined by the will is not sufficient to relieve them from the liability for the loss sustained by their failure to sell.

It is not controverted that the claim made and litigated by Lackey was for the purpose and with the hope, on his part, of recovering the negroes. Nor can it be questioned that a claim thus set up and prosecuted would have affected the price of the slaves if they had been offered for sale before its invalidity was established. Under these circumstances, can it be held that the executors were guilty of such wilful negligence of duty in failing to proceed with the sale advertised to take place in April, 1860, as to render them liable for the loss of the slaves.

It was their duty to bring the slaves to sale within a reasonable time after the death of testator, but not hastily or improvidently, if the situation or circumstances were of such character as seriously to lessen the price for which they ought to sell. Nor could they be required to assume personal responsibility to the buyers for failure to disclose facts which might ultimately result in loss of the slaves.

It was not only not their duty to sell under such circumstances, but on the contrary, where there is a serious dispute in regard to trust property, a sale of it to the prejudice of the beneficiaries might subject the trustee to personal liability. Perry on Trust, §770; Hill on Trusts, 474, note 3.

We are of opinion, therefore, that the executors are not liable for the loss of the slaves by the results of the war, which they could neither foresee nor prevent.

At the time Clanton gave his notes, he and one of his sureties resided in Kentucky, although at no great

distance from Montgomery County, Tennessee. His wife and both his sureties were legatees under the will.

Clanton was supposed to be worth, at that time, $40,000, and the probable shares of his sureties under the will was considered by the executors as ample security for Clanton's notes.

The notes fell due in October, 1860, and within a month or two thereafter, Clanton failed, and his property in Kentucky, to the amount of $18,000 or $20,000, was sold at execution sales by the Sheriff.

The executors brought no suit against Clanton in Kentucky, but obtained judgment against one of the sureties in Tennessee, and the shares of both sureties in the proceeds of sales, have been applied to Clanton's debt in the Master's report, amounting, computing interest to the time of taking the account, to nearly $3,500, and the balance of Clanton's notes has been charged to executors, with interest from the time they fell due.

This was done upon the ground, either that the executors had not taken sufficient security at the time of their execution, and were wanting in that care and vigilance required of them, or because they did not exercise due care and diligence in endeavoring to collect the notes after they fell due.

The will does not specify the time at which the property shall be sold, but it does leave to the discretion of the executors the terms as to the credit, upon which it may be sold.

: They qualified in September, 1859, and sold in the next month, upon twelve months credit, the notes falling due October 19, 1860. As to the time at which the sale was made, and as to credit given, we think there is no ground for exception to the action of the executors, and in these particulars we do not understand that any objection has been made.

It was certainly their duty to take adequate and sufficient security from the several purchasers. The purchaser being a non-resident, is certainly no objection to his becoming a purchaser, but he ought to give as sureties persons who are themselves within the jurisdiction of the Courts of the State, and whose property is within its jurisdiction, or if the sureties be non-residents of the State, they should have, within the jurisdiction of our own Courts, property which could be subjected to the satisfaction of their obligation.

We have been referred to a case in South Carolina, where two distributees, who resided in Louisiana, had purchased at the administrator's sale in South Carolina, each in excess of his share of the estate, and had become sureties for each other, in which it was held that the administrator is liable if he takes as sureties persons residing beyond the jurisdiction of the Courts of the State. S. C. Reports, (new series,) 337.

And a very good reason is assigned for the ruling in that case. Both parties to the notes were residents of a distant State, with no means within the jurisdiction of the State Courts, under which the administration was granted, which could be subjected to the pay-

Mickle *v.* Brown.

ment of said notes, and because it was unreasonable to require those interested in the fund to encounter the delay, trouble, and expense consequent upon the pursuit of the debtor in a foreign Court.

Here, however, the sureties had a fund in the hands of the executors probably sufficient to liquidate Clanton's notes, if the executors should be obliged to resort to it, and Clanton was reputed and regarded as a man of wealth. And although he resided in Kentucky, it was at no great distance from the residence of the executors, and at the time of this transaction the security seemed to be ample, and such as would have been deemed sufficient in the judgment of a reasonably prudent and diligent man in the management of his own affairs. And executors or other trustees who act in perfect faith should not be held to the utmost degree of diligence. 1 Ired. Eq., 108; 5 Howard, 275, in which last cited case it is said, that where an executor, administrator, or other trustee is to be made liable for more than he actually receives, it must be in cases of very supine negligence, or willful default.

Nor do we think the executors were guilty of such negligence or want of diligence in failing to bring suit against Clanton after the maturity of his notes, and before his utter insolvency, an interval of about a month or two, as to render them liable. Nor was it such negligence, after his insolvency, to fail to sue, as such prosecution at that time could have resulted in no benefit to the estate.

The loss is fairly attributable to the results of the

war, by which so many fortunes in the South were wrecked. There is nothing in the record to impugn the good faith and fair dealing of the executors in the management of the business of their trust, and it would be inequitable and harsh to hold them liable for losses reasonable diligence and care could not guard against.

With the modification indicated in this opinion the decree of the Chancellor will be affirmed.